### BRY, Admr v MILLER et

Ohio Appeals, 5th Dist, Stark Co

Decided Oct 22, 1931

J. J. McCall, Canton, for Bry, Admr, plaintiff in error.

W. R. Thom and C. S. McDowell, Canton for Miller et, defendants in reror.

LEMERT, J.

All parties in this lawsuit agree that the loan of $4,400 to Andrew H. Miller, by Mary H. Miller, his daughter-in-law, as represented by the promissory note executed Novebmer 15, 1928, and secured by mortgage on real estate, was a bona fide one in all respects, and therefore should be paid. Plaintiff in error asserts that the payment of $3,800 in cash to Mary H. Miller by Andrew H. Miller on December 10, 1928, at the Dime Savings Bank of Canton, Ohio, should be regarded as a payment on this mortgage loan, whereas the defendant in error, Mary H. Miller, insists that this money was not, in fact, to be applied on the mortgage loan, but was given to her to insure Andrew Miller's care and keep during the remaining years of his life, so the sole and only question for determination in the court below was the issue as above set forth.

The original note of $4,400 is an exhibit in this case, and from an examination of it we find that it bears no endorsement whatsoever and no notations of payment.

We do not deem it necessary to quote the evidence, as contained in the record, at any great length, but suffice it to say that the record discloses that at various times and places the said Andrew H. Miller, to various friends and acquaintances, made statements to the effect that he intended to and had given the $3,800 to Mary H. Miller for past favors and for his care and keep during the remainder of his life, so the question arises with his declarations made on various occasions that he gave this money to his daughter-in-law, Mary H. Miller, not as a payment upon his mortgage loan, but for the purpose of assuring a home for himself. So, the query arises, Were these statements against interest? and if they were, they were therefore admissible in evidence.

We note that when Andrew H. Miller went to Europe in June of 1921, and that previous to going, he put all his property in trust with his son, Emil Miller, and directed him to divide the same among his children, each to receive $5,000. When Emil Miller breached his trust with his father the latter returned to America and came to Canton in May of 1927, when he brought suit against the son for an accounting. The father recovered, among other things, a forty acre tract of land in Nimishillen township, Stark County, Ohio, on which there was an outstanding mortgage held by Jacob S. Keim of Louisville, Ohio. The evidence shows that Mary H. Miller, his daughter-in-law, advanced in all $4,400 to enable Andrew H. Miller to take care of the Keim obligation. It further appears that Andrew Miller had certain monies, amount-

ing to approximately $3,800, on deposit in Europe, and this money he later received in Canton, through the American Exchange Bank, on or about December 10, 1928.

These financial matters were evidently a source of worry to Andrew Miller. The worry made him talkative, and he spoke of his trouble to his friends rather frequently, and it is very evident that the father, Andrew Miller, wanted to make certain that he would have a home in which to pass his last days in comfort.

This type of evidence is admissible under the rule permitting the introduction of admissions against interest. In Metzler's Ohio Travel Evidence, Sec. 177, the following rule is laid down:

"The admissions of a party against his interest are admitted on the ground that the matter declared is probably true. The regard which men usually pay to their own interest is deemed sufficient security that a party's declarations were not made under any mistake of fact or without information, if he had the requisite means of knowledge."

The evidence is quite clear and convincing that Andrew Miller gave the $3,800 to Mary H. Miller, to use the language of Andrew H. Miller, "for his care and keep for the balance of his life in her home."

To combat this array of convincing testimony, the plaintiff in error in the court below sought to introduce the testimony of witnesses who, had they been permitted to testify, would have testified that Andrew H. Miller told them he had paid the money he received from Europe on the mortgage. This evidence the court refused to hear, on the ground that it was self-serving.

It is to be noted from the record that the testimony of the witnesses who said Andrew Miller had given the money to Mary Miller for his keep, was in the form of rebuttal testimony. The testimony that was ruled out by the court below was what would be rightly termed sur-rebuttal testimony. For the admission of such testimony we understand the law to be that it must be confined to a denial of specific statement and not include statements and elements of a contrary nature, made at another time and place. While the evidence sought to be introduced by plaintiff in error might have been competent at another stage in the case, it was not competent as sur-rebuttal testimony.

We believe this principle of law is well laid down in **Vol. 2, Ohio Decisions, 198**, wherein it was held:

"Where one party introduces in evidence a conversation had by him with the opposite party, tending to prove an admission on the part of the latter, it is not competent for the latter to introduce a subsequent independent conversation which he had with a third person for the purpose of contradicting the testimony tending to prove such admission."

To the same effect, in the 23d Ohio Nisi Prius, New Series, page 313, it was held:

"Declarations made by deceased donor of land are competent when offered by the donee in defense of his title, but contrary statements by the donor fall within the prohibition of self-serving declarations and are inadmissible in evidence."

In the above entitled case a similar judgment was entered in the Court of Appeals on the reasonings and authorities found in the opinion of the Common Pleas Court. Courts outside of the State of Ohio generally follow the Ohio rule.

Vol. 3 Jones on Evidence, page 1980:

"But admissions cannot be rebutted or explained by other statements of the declarant made at another time, for such other statements are not admissible for that purpose. Usually they form a part of the res gestae."

It has also been held that:

"A party will not be permitted to neutralize or destroy the effect of an admission by evidence of counter-declarations at another time, which indeed would be permitting him to manufacture testimony for himself."

It has also been held that:

"Admissions and confessions are evidence against a party, but he cannot annul or explain them away by counter-declarations." 6th Colo. Repts., 253.

Taking this record as a whole, we do not believe that Andrew H. Miller did an unnatural thing in giving the $3,800 to Mary H. Miller, who was his daughter-in-law, as the record shows that she had been kind and faithful to him and by so doing he did not forget his own children, for long before his death he had given his son Joe a farm

of eighty acres, to Albert, his deceased son, a filling station, and to his daughter in Europe different sums of money. The father had had a distressing experience with his son Emil, to whom he had given all his property in trust, with instructions to sell it and divide the resulting money, $5,000 to each of his children, only to find his son Emil betraying this trust. The father was eventually forced to go into court and compel Emil to make restitution.

Andrew Miller had a right to seek to protect himself in his last days and to give his money to the only one in the family who seemed to care for him and in whose home he felt that he would be able to live until his death.

Finding no errors in the finding and judgment of the court below, it therefore follows that this case is hereby affirmed, with exceptions noted.

SHERICK, PJ, and MONTGOMERY, J, concur.